IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PODIATRY IN MOTION, INC., ) | |
| ) | |
| Plaintiff, ) | Case No. 16 C 02653 |
| ) | |
| v. ) | Honorable John Z. Lee |
| ) | |
| COVERMYMEDS, LLC, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO TRANSFER VENUE**

## I.   INTRODUCTION

Plaintiff Podiatry in Motion, Inc. ("Podiatry in Motion") filed this case alleging that Defendant CoverMyMeds, LLC ("CoverMyMeds") sent it unsolicited fax advertisements in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). Plaintiff seeks to bring this action as a class action on behalf of a proposed nation-wide class of persons that received what Plaintiff alleges are unsolicited fax advertisements. (See Complaint at ¶25; Dkt. #1). As discussed below, the only real connection this case has to the Northern District of Illinois is that the putative named Plaintiff resides there. The relevant locus of the facts alleged in the complaint, and all the relevant evidence is in the Southern District of Ohio. CoverMyMeds' headquarters are located in Columbus, Ohio, which is in the Southern District of Ohio[1]. All of the relevant witnesses, documents and physical evidence are located in the Southern District of Ohio. Therefore CoverMyMeds seeks to transfer this case to the Southern District of Ohio pursuant to 28 U.S.C. § 1404(a).

**II.    ARGUMENT**

"For the convenience of parties, witnesses and in the interest of justice," the court may transfer an action "to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Courts base this determination upon an "individualized, case-by-case consideration of convenience and fairness[.]" *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964); *F.T.C. v. Am. Tax Relief*, No. 10 C 6123, 2011 WL 2893059, at *3 (N.D. Ill., July 20, 2011). Transfer is appropriate when "(1) venue was proper in the transferor district, (2) venue and jurisdiction would be proper in the transferee district, and (3) the transfer will serve the convenience of parties and the witnesses as well as the interests of justice." *United Air Lines, Inc. v. Mesa Airlines, Inc.*, 8 F.Supp.2d 796, 798 (N.D. Ill. 1998) (citation omitted). This court should exercise its broad discretion to grant Defendant's motion to transfer because the Southern District of Ohio is an appropriate venue and because both private and public factors weigh in favor of a transfer.

**A.    The Motion Is Timely.**

A motion for change of venue based on inconvenient forum may be brought at any time, and courts in this District have consistently held that a party merely needs to act with "reasonable promptness." *See Prokop v. Stonemor Partners LP*, No. 09 CV 4323, 2009 WL 3764103, at *2 (N.D. Ill. Nov. 9, 2009); *Black & Decker (U.S.), Inc. v. Sunbeam Corp.*, No. 93 C 4695, 1994 WL 865386, at *2 (N.D. Ill. Feb. 2, 1994). *See also Blumenthal v. Mgmt. Assistance, Inc.*, 480 F.Supp. 470, 471 (N.D. Ill. 1979) (holding that a three-year delay in filing motion to transfer was

---

*(footnote continued from previous page)*

[1]    The court may take judicial notice of the fact that Columbus, OH is located in the Southern District of Ohio.

not untimely). This case is in its very early stages, as the Complaint was filed on February 29, 2016, and the time for Defendant to file its responsive pleading has not yet passed.

### B. Venue is Proper in the Transferor and Transferee Courts.

Podiatry in Motion brought this action against CoverMyMeds in the Northern District of Illinois, and CoverMyMeds does not challenge that it is subject to personal jurisdiction here. *See* 735 ILCS 5/2-209 (2016). Thus, venue is proper in the transferor court. Similarly, venue would be proper in the transferee court, the Southern District of Ohio, which is where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b). The TCPA makes it unlawful "to use any telephone facsimile machine, computer, or other device *to send*, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227 (emphasis added). Here, all of the faxes were sent from Columbus Ohio, and thus Columbus, Ohio is the location where the events giving rise to Plaintiff's nationwide class claims occurred.

The United States District Court for the Southern District of Ohio would have personal jurisdiction over Podiatry in Motion pursuant to Ohio Rev. Code Ann. §2307.382 (2015). Venue is also proper in the Southern District of Ohio because CoverMyMeds, the Defendant, resides there. *See* 28 U.S.C. § 1391(b). Therefore, this case may be properly transferred there.

### C. Private Interests in this Case Compel Transfer to the Southern District of Ohio.

In assessing the remaining factors to transfer venue, courts in this District first analyze private interests, which relate primarily to the interests of the parties and witnesses. *F.T.C.*, 2011 WL 2893059, at *3-4, 7. Specifically, courts consider "(1) [the] plaintiff's choice of forum, (2) the situs of the material events, (3) the relative ease of access to sources of proof, (4) the convenience of the parties, and (5) the convenience of the witnesses." *Id.* at *4 (citation and quotation marks omitted). All of these factors weigh in favor of a transfer.

### 1. In Putative Class Actions, the Plaintiff's Choice of Forum Is Given Very Little Weight

Although the plaintiff's choice of forum factors into the determination of whether to transfer, "it is not absolute." *Plotkin v. IP Axess, Inc.*, 168 F.Supp.2d 899, 902 (N.D. Ill. 2001). It is well-settled law in the Northern District of Illinois that in a putative nationwide class action, *including a TCPA class action*, a plaintiff's choice of forum is to be given little weight, because any other class members might be inconvenienced by the named plaintiff's choice of forum. *See*, *e.g.*, *Humphrey v. United Healthcare Servs., Inc.*, No. 14 C 1157, 2014 WL 3511498, at *3 (N.D. Ill. July 16, 2014) (transferring TCPA class action because named plaintiff's choice of forum was "not persuasive or entitled to deference"); *Lafleur v. Dollar Tree Stores, Inc.*, No. 1:11 CV 8473, 2012 WL 2280090, at *3 (N.D. Ill. June 18, 2012) ("Courts in this district have consistently held that a plaintiff's choice of forum is afforded less deference when the plaintiff represents a class"); *Nero v. Am. Family Mut. Ins. Co.*, No. 11 C 1072, 2011 WL 2938138, at *2 (N.D. Ill. July 19, 2011) ("[W]hen an individual represents a class, the named plaintiff's choice of forum is given less weight"); *Ashland Jewelers, Inc. v. NTR Metals, LLC*, No. 10 C 4690, 2011 WL 1303214, at *7 (N.D. Ill. Mar. 31, 2011) (giving "little weight" to plaintiff's choice of forum in class action); *Simonoff v. Kaplan, Inc.*, No. 09 C 5017, 2010 WL 1195855, at *1 (N.D. Ill. Mar. 17, 2010) ("[A] majority of courts in this District have concluded that a plaintiff's choice of forum in a class action should be discounted"); *Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 914 (N.D. Ill. 2009) (plaintiff's choice of forum "is greatly discounted in class actions"); *Morris v. Am. Bioscience, Inc.*, No. 03 C 7525, 2004 WL 2496496, at *2 (N.D. Ill. Nov. 3, 2004) ("[I]n class action suits the weight given to the plaintiff's choice of forum is not substantial"); *Georgouses v. NaTec Res., Inc.*, 963 F. Supp. 728, 730 (N.D. Ill. 1997) ("[B]ecause plaintiff alleges a class action, plaintiff's home forum is irrelevant"); *Genden v.*

4

*Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 621 F. Supp. 780, 782 (N.D. Ill 1985) ("[T]he location of the main class representative plaintiffs" is not "relevant to a Section 1404(a) determination")*; but see AL and PO Corp. v. Am. Healthcare Capital, Inc.*, No. 14 C 1905, 2015 WL 738694, at *2-3 (N.D. Ill. Feb. 19, 2015) (declining to adopt this reasoning but acknowledging that by doing so it is an outlier). Here, Plaintiff proposes a nationwide class, and any other class members would be inconvenienced by its choice of forum, so, as the clear majority of caselaw suggests, Plaintiff's choice of forum should be accorded very little, if any, weight.

In addition, a plaintiff's "choice [of forum] is entitled less deference when the forum is not the site of material events[.]" *See F.T.C.*, 2011 WL 2893059, at *4 (citations omitted). Said differently, the plaintiff's choice is "of minimal value where none of the conduct complained of occurred in the forum selected by the plaintiff." *Aramark Mgmt. Serv. Ltd. P'ship v. Martha's Vineyard Hospital*, No. 03-CV-1642, 2003 WL 21476091, at *2 (N.D. Ill. June 23, 2003). *See also JDA eHealth Sys., Inc. v. Chapin Revenue Cycle Mgmt., LLC*, No. 10 C 7781, 2011 WL 2518938, at *8-9 (N.D. Ill. June 23, 2011) (plaintiff's choice of forum given minimal weight because material events giving rise to claim occurred in transferee forum); *Ty, Inc. v. Beanie World, Inc.*, No. 99 C 4199, 1999 WL 782092, at *2 (N.D. Ill. Sept. 27, 1999) (same); *Pansophic Systems, Inc. v. Graphic Computer Serv., Inc.*, 736 F. Supp. 878, 880-81 (N.D. Ill. 1990) (same); *Chicago Rock Island R.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955) (same), *cert. denied*, 350 U.S. 822 (1955). In this case, the vast majority of the material events took place in Ohio. First, the transmission of the allegedly unlawful faxes occurred *in Columbus, Ohio*. (Matt Scantland Decl., Ex. A, ¶ 6). CoverMyMeds employees *in Ohio* (*primarily Columbus*) operated the systems that generated the faxes. (*Id.* at ¶ 10.) CoverMyMeds' policies and practices

5

concerning the transmission of faxes were developed *in Ohio* by *Ohio* employees (again primarily employees in Columbus). (*Id.* at ¶ 11.)

Because this case is a putative nationwide class action, and because the overwhelming majority of material events in this case occurred in Columbus, Ohio, Podiatry in Motion's chosen forum should be given very little weight.

### 2. In TCPA Cases, the Situs of Material Events Is Where the Allegedly Unsolicited Faxes, Calls or Texts Originated

In determining the situs of material events, a court will look at the location where the events at issue in the case occurred. *See Plotkin*, 168 F. Supp. 2d at 903 (holding that the situs of material events was in Texas since the majority of the events that were at issue in the case took place in Texas). As noted above, the TCPA prohibits the "send[ing]" of unsolicited faxes. Therefore, in TCPA cases, the situs of material events is where the allegedly unsolicited communications *originated*. *Camarena v. Vanderbilt Mortgage and Finance, Inc.*, No. 15 C 00656, 2015 WL 4036258, at *3 (N.D. Ill. July 1, 2015). Indeed in a TCPA faxing case, the conduct complained of is "the *sending* and not the *receipt* of the faxes at issue." *Geisman v. ZocDoc, Inc.*, 2014 WL 4230910, at *3 (E.D. Mo. Aug. 26, 2014); *C-Mart, Inc. v. Metropolitan Life Ins. Co.*, 2013 WL 2403666, at *4 (E.D. Mo. May 21, 2013). *See also Joseph v. TrueBlue, Inc.*, 2014 WL 6909868, at *3 (E.D. Wash. Dec. 8, 2014) (alleged violation of TCPA in texting case occurred where text originated); *Grafton v. Jefferson Capital Systems, LLC*, , 2011 WL 4807893, at *3 (M.D. Penn. Oct. 11, 2011) (alleged conduct in TCPA calls case occurred where calls originated).

Significantly, all of the faxes at issue in this case originated from or were transmitted from CoverMyMeds' headquarters in Columbus, Ohio, in the Southern District of Ohio. (Scantland Decl., Ex. A, ¶ 6.) Employees located primarily in Columbus, Ohio operated the

systems that generated the faxes using servers, computers and related hardware located in Columbus, Ohio. (*Id.*, ¶ 10.) The faxes were also designed primarily by employees in Columbus, Ohio and also the employees who implemented the system which sends the faxes are also located in Ohio. (*Id.*, ¶ 11.) In short, the situs of material events in this case is clearly the Southern District of Ohio, which weighs strongly in favor of transfer. *See Allied Van Lines, Inc. v. Aaron Transfer and Storage, Inc.*, 200 F.Supp.2d 941, 947 (N.D. Ill. 2002) (granting motion to transfer to Northern District of Texas because, among other reasons, "many of the material events… took place in Texas").

Furthermore where a defendant allegedly caused economic damage to a plaintiff in another state, the situs of material events occurred where the defendant's actions occurred, not where the damage was allegedly sustained. *Georgouses*, 963 F.Supp. at 731 (situs of material events was Houston because although plaintiff's economic damages were suffered in Illinois, defendants' actions allegedly causing those damages took place in Houston). The court also considers where the majority of the defendant's business activities giving rise to the alleged wrongful conduct occurred. *Plotkin*, 168 F. Supp. 2d at 903. Again, these actions and activities occurred primarily in Columbus, Ohio. The situs of material events factor weighs strongly in favor of transfer.

### 3. The Relative Ease of Access to Sources of Proof Favors Transfer.

In considering a motion to transfer, courts in this District strongly weigh the access to physical evidence. "'[T]he location and ease of access to *physical* evidence is accorded more weight.'" *Qurio Holdings, Inc. v. DIRECTV, LLC*, 2015 WL 1943278 at *4, No. 14-cv-7502 (N.D. Ill. Apr. 29, 2015) (Lee, J.) (emphasis in original) (quoting *Craik v. Boeing Co.*, 37 F. Supp. 3d 954, 961 (N.D. Ill. 2013)). *See also Tawil v. Illinois Tool Works Inc.*, No. 15 C 06808, 2015 WL 7889036, at *3 (N.D. Ill. Dec. 4, 2015) (transferring case when physical evidence was

7

located in New Jersey); *Craik*, 37 F. Supp. 3d at 961 (transferring case when physical evidence that could not be converted into an electronically transferrable format was in Seattle); *Lewis v. Grote Indus., Inc.*, 841 F. Supp. 2d 1049, 1053-54 (N.D. Ill. 2012) (transferring case when defendant's equipment was located in Madison and would not be easily transportable); *Woosely v. C.R. England, Inc.*, No. 11 C 3615, 2011 WL 5404046, at *2 (N.D. Ill. Nov. 7, 2011) (transferring case when physical evidence was in Indiana).

Here, the important pieces of physical evidence are primarily located in Columbus, Ohio, including the servers, computers, and related hardware used to transmit the allegedly unlawful faxes. (Scantland Decl., Ex. A, ¶ 5.) These items are key pieces of physical evidence a jury, not to mention Plaintiff, may need to examine.

We recognize that courts in the modern age give the location of documentary evidence less deference, "[u]nless the records are extraordinarily voluminous or otherwise difficult to ship," *Rugamboa v. Rungenga*, No. 06 C 1142, 2007 WL 317035, at *2 (N.D.Ill. 1997). To the extent the court considers this factor, all of CoverMyMeds' documents and fax transmission records, related to this case (which will be voluminous) are located in Columbus, Ohio. (Scantland Decl., Ex. A, ¶¶ 7, 8.) These documents include the faxes themselves, transmission records regarding the faxes, and records regarding consent. In addition, the location and convenience of witnesses who can authenticate and explain relevant documents and computer systems and structures "is to be considered in determining… the relative ease of access of proof[.]" *ORD Structure Innovations, LLC v. Oracle Corp.*, No. 11 C 3307, 2011 WL 4435667, at *3 (N.D. Ill. Sept. 22, 2011); *see also S.E.C. v. Kasirer*, No. 04 C 4340, 2005 WL 645246, at *3 (N.D. Ill. Mar. 21, 2005). As discussed more fully below, it is CoverMyMeds' employees

located in Columbus, Ohio who will have sufficient knowledge of these documents and systems in order to authenticate and explain them. (*Id.*)

Because the key physical evidence, along with the majority of documents and the employees who can authenticate and explain them, are in Columbus, Ohio, the relative ease of access to sources of proof also weighs in favor of transfer to the Southern District of Ohio.

### 4. The Convenience of the Parties Is a Neutral Factor

In considering the convenience of the parties, "the court should consider their respective residences and their ability to bear the expenses of litigating in a particular forum." *Bryant v. ITT Corp.*, 48 F.Supp.2d 829, 834 (N.D. Ill. 1999). It would be equidistant for Podiatry in Motion to travel to Ohio to litigate as it would for CoverMyMeds to travel to Illinois to litigate. However, since CoverMyMeds is a corporate entity, multiple CoverMyMeds representatives or witnesses would likely have to travel to Illinois for trial as opposed to only the Plaintiff who would have to travel to Columbus, Ohio if the case were transferred there. Thus, this factor weighs slightly in favor of CoverMyMeds' motion to transfer.

### 5. The Convenience of the Witnesses Favors Transfer

"[T]he convenience of witnesses is generally viewed as the most important factor when considering a transfer of venue." *F.T.C.*, 2011 WL 2893059, at *6 (citation omitted). As the Court assesses this factor, it must consider "the number of witnesses in each forum and the importance of each witness' testimony[.]" *Id*.

Below is a list of key witnesses based upon CoverMyMeds' preliminary fact investigation. They are all located in Ohio and primarily in the Columbus, Ohio area.[2] The

---

[2] CoverMyMeds believes that the listed individuals have or may have relevant, discoverable information that CoverMyMeds may use in support of its defenses. CoverMyMeds' review and investigation of this

*(footnote continued to next page)*

affidavit of Mr. Scantland supports the argument that the relevant witnesses are primarily in Columbus, Ohio, with the exception of a few who are in the Cleveland area, in the Northern District of Ohio. (Scantland Decl., Ex. A, ¶¶8-11.)

| Witness | Job Title | Location of Witness for Deposition | Topics of Testimony |
|---|---|---|---|
| Matt Scantland | Co-Founder | Columbus, OH | Purpose of prior authorizations and how process is conducted via fax |
| Michelle Brown | VP of Operations | Columbus, OH | Prior authorization workflow in system, origination of fax transmissions |
| Alan Gilbert | VP of Engineering and Analytics | Columbus, OH | Technical operations of CMM system and what triggers transactional faxes to be sent |
| Chrissy Hand | Director of Marketing | Columbus, OH | Overview of marketing campaigns sent via fax, purpose of campaigns, how fax numbers and consent are collected |
| Jess Ehler | Marketing Manager | Columbus, OH | Process of working with health plans and PBMs to execute fax marketing campaigns, consent from health plans |
| John Clapham | Director of Pharmacy Accounts | Columbus, OH | Process of working with pharmacy corporations and pharmacy software systems to fax their pharmacy store locations |
| Barry Brinkley | Engineering Manager | Columbus, OH | Implementation of Terms of Service in CMM portal |
| Suzy Bureau | Products Strategy & Execution Manager | Columbus, OH | Process of physicians and pharmacist sign up and acceptance of Terms of Service in CMM portal |
| Chip Burke | Director of Infrastructure | Columbus, OH | Fax technology used by CMM for fax transmissions |
| Laurie Boogaard | Director of Customer Operations | Columbus, OH | Opt out process for fax transmissions |
| Kent Broestl | Software Developer | Columbus, OH | Technical execution of marketing faxes sent by CMM |
| Jon Canady | Engineering Manager | Columbus, OH | Technical execution of transactional faxes sent by CMM |
| Rob Littleton | Manager, Prior Authorization Analytics | Columbus, OH | Data collected when fax transmissions are sent by CMM |

---

*(footnote continued from previous page)*
case is ongoing, and it reserves the right to supplement this list as more information becomes available to it. CoverMyMeds reserves its right to object under the Federal Rules of Civil Procedure or the Local Civil Rules of this Court to the deposition testimony of any of the individuals listed. CoverMyMeds also reserves the right to seek discovery from and relating to other individuals that may subsequently become known as individuals likely to have discoverable information relevant to this case.

| Witness | Job Title | Location of Witness for Deposition | Topics of Testimony |
|---|---|---|---|
| Deborah Bitzan | Marketing Analyst | Columbus, OH | How marketing target lists for fax campaigns are generated |
| Caitlin Graham | Manager, Provider Relations and Solutions | Columbus, OH | Relationships with large hospital organizations, consent to fax through BAA |
| Julie Hessick | Director of PBM/ Plan Accounts | Columbus, OH | Relationship with PBMs and health plans and purpose of marketing to their doctors |
| Dan Renner | Engineering Director, PBM/ Plan | Columbus, OH | Explanation of CMM Central, product used by health plans to transmit their PA faxes to doctors through CMM's system |
| Vicki Muscarella | Engineering Manager | Columbus, OH | Explanation of technical details of fax transmissions from health plans to doctors through CMM Central |
| Beth Gustin | Contracts Manager | Columbus, OH | Overview of contracts with health plans, providers and pharmacies and consent to communicate with them via fax |
| Tricia Yacavone | Manager, Clinical Content | Columbus, OH | Explanation of prior authorization forms sent through CMM's system |
| Ted Frank | Chief Financial Officer | Cleveland, OH | Revenue model for CoverMyMeds, lack of commercial value for faxes sent to doctors and pharmacists |
| Joann Chen | VP, Controller | Cleveland, OH | Financial status of CoverMyMeds |
| Mike Bukach | VP, Phamacy Chain Accounts | Cleveland, OH | Relationship with pharmacies who are recipients of faxes transmitted by CMM |
| Mark Osoteo | Director of Information Security | Cleveland, OH | Use of fax for communication of security information to pharmacists and physicians |
| Alan Pendergrass | VP, Operational Intelligence | Cleveland, OH | Analysis of data collected around fax transmissions and explanation of how number of faxes by category was derived |

As shown above, the vast majority of witnesses reside in the Southern District of Ohio with a few additional witnesses in the Cleveland area which is in the Northern District of Ohio and close to Columbus. The witnesses would have to travel to appear in the Northern District of Illinois. In analyzing the convenience of witnesses factor, "a district court will look to the nature and quality of the witnesses' testimony with respect to the issues of the case, with a keen eye towards those persons who will have to physically leave home in order to appear at and prepare

11

for trial." *Qurio Holdings*, 2015 WL 1943278 at *5 (Lee, J.). The witnesses listed above have critical testimony to offer, as outlined in the chart. They would have to travel from their homes in the Columbus and Cleveland Ohio areas in order to appear at and prepare for a trial in Illinois. Thus, this factor weighs heavily in favor of transfer.

### D. Public Interests in this Case Compel Transfer to the Southern District of Ohio.

Finally, when presented with a motion to transfer, courts consider public interests and judicial economy, including the speed at which a case will proceed to trial, the interest of courts in resolving controversies in their own locale, and the transferee court's familiarity with applicable law. *F.T.C.*, 2011 WL 2893059, at *7. In this case, transfer to the Southern District of Ohio will be more efficient, and will serve the public interest. The Southern District of Ohio has a much less crowded docket than the Northern District of Illinois, and the matter is expected to proceed to trial more quickly in the Southern District of Ohio. The Southern District of Ohio also has a greater interest in resolving controversies involving companies located in that District. Finally, both courts would be equally familiar with the applicable federal law, so this is a neutral factor.

#### 1. The Case Will Likely Proceed More Efficiently in the Southern District of Ohio.

In assessing which district will more efficiently handle a case, courts often rely upon the Federal Court Management Statistics. *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 962 (N.D. Ill. 2000). The median time from filing to trial in the Southern District of Ohio is three and a half months shorter, at 29.5 months in comparison to 33.0 months in the Northern District of Illinois. (*See* O'Connor Decl., Ex. B, ¶¶ 3-4). Finally, 10.4% of civil cases in the Northern District of Illinois have lingered on the docket for more than three years, while the equivalent number in Ohio is only 2.6%. *Id.* The Southern District of Ohio would likely be the venue in

which this case would proceed more efficiently, thus serving the interests of justice. This factor weighs in favor of transfer.

### 2. The Southern District of Ohio Has a Stronger Relationship to the Occurrence at Issue

In general, courts find that the "situs of material events" bears the strongest relationship to the occurrence at issue. *Plotkin*, 168 F.Supp.2d at 905. There is a strong public interest in having cases litigated in the state where the alleged events occurred and having local jurors decide the case. *Rugamboa*, 2007 WL 317035, at *3 (holding that because the accident in question occurred in Michigan, it was "in the public interest to have this dispute decided [in Michigan] and to have the local residents act as jurors[.]"). As noted above, the material events in this case occurred in the Southern District of Ohio. (*See, generally,* Scantland Decl., Ex. A.) Therefore, the Southern District of Ohio bears the strongest relationship to the occurrence at issue. Again the only connection this putative nationwide class action case has to the Northern District of Illinois is the location of the putative named plaintiff which is to be accorded little weight. *Ashland Jewelers,* 2011 WL 1303214 at *7 (N.D. Ill. Mar. 31, 2011). For these reasons, the Southern District of Ohio has a much stronger relationship to the occurrence at issue, favoring transfer.

### 3. The Southern District of Ohio Has a Greater Interest in Resolving this Controversy.

In addition to being more closely related to the occurrence at issue, the Southern District of Ohio also has a stronger interest in resolving this controversy. This factor most often favors the district in which the defendant's alleged acts occurred and not where the alleged injury was felt. *See Plotkin*, 168 F.Supp.2d at 905. "[T]he administration of justice is served more efficiently when the action is brought before a court that is closer to the action…. The 'action' is

13

usually associated with the defendant's activities[.]" *Ellis Corp. v. Jensen USA, Inc.*, No. 02 C 7380, 2003 WL 22111100, at *3 (N.D. Ill. Sept. 9, 2003).

CoverMyMeds is located in Columbus, Ohio, and all of its allegedly unlawful actions took place there. It is a growing company and significant employer in Columbus, Ohio. There is a strong local interest when the "cause of action calls into question the work and reputation of several individuals residing in or near that district[.]" *Simonian v. Pfizer, Inc.*, No. 10 C 1193, 2011 WL 2110005, at *2 (N.D. Ill. May 23, 2011). Because CoverMyMeds' headquarters are in Columbus, Ohio, it is Ohio and not Illinois which has a strong local interest in CoverMyMeds's business, its work and its reputation.

In addition, the State of Ohio has a stronger interest than the State of Illinois in ensuring that Ohio companies follow the law. Specifically in a TCPA case, the state where "[t]he material events occurred… in the sense that the [acts that were potential TCPA violations] were planned and originated there…. has the greater interest in resolving [the] controversy and the more meaningful relationship with it." *Camarena*, 2015 WL 4036258, at *4. Because the faxes at issue in this TCPA case were planned in Ohio and originated in Ohio, Ohio has the greater interest in this litigation. This factor, too, favors transfer.

### 4. The Court's Familiarity with the Controlling Law Is a Neutral Factor.

The final public interest factor that courts consider is whether either of the districts is more familiar with the controlling law. "[A]ll federal courts are presumed equally capable and experienced with respect to matters of federal law." *Camarena*, 2015 WL 4036258, at *4. The TCPA is a federal statute, and Illinois and Ohio district courts are equally familiar with it. Therefore, this factor is neutral.

### III. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this action be transferred to the U.S. District Court for the Southern District of Ohio.

Dated: April 18, 2016          Respectfully submitted,

                               COVERMYMEDS, LLC.

                               By: ____ /s/ Bart T. Murphy_____
                                     By One of its Attorneys

Bart T. Murphy (6181178)
Martha O'Connor
Ice Miller LLP
2300 Cabot Dr., Suite 455
Lisle Illinois 60532
630-955-6392

Isaac J. Colunga
Heather Maly
Ice Miller LLP
200 W. Madison St., Ste. 3500
Chicago, IL 60606
312-726-1567

### CERTIFICATE OF SERVICE

The undersigned, an attorney, states that on April 19, 2016 he caused the foregoing to be filed with the Clerk of the United States District Court for the Northern District of Illinois and a copy of which will be served on the following counsel of record by the Clerk's ECF/CM system.

         Daniel A. Edelman     court@ecl@edcombs.com
         Cathleen M. Combs    ccombs@edcombs.com
         Julie Clark                 jclark@edcombs.com
         James Latturner        jlatturner@edcombs.com

                          s/Bart T. Murphy_____
                          Bart T. Murphy
                          Ice Miller LLP
                          2300 Cabot Dr., Ste,. 455
                          Lisle, IL 60532
                          (630) 955-6392