**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PODIATRY IN MOTION, INC., | ) | |
| on behalf of plaintiff and | ) | |
| the class members defined herein, | ) | |
| | ) | |
| Plaintiff, | ) | No. 16-cv-2653 |
| | ) | |
| v. | ) | Honorable Judge Lee |
| | ) | Magistrate Judge Cole |
| COVERMYMEDS, LLC, | ) | |
| and JOHN DOES 1-10, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MOTION FOR PRELIMINARY
<u>APPROVAL OF THE CLASS ACTION SETTLEMENT</u>**

Plaintiff Podiatry In Motion, Inc. ("Plaintiff") respectfully requests that this Court: (i) preliminarily certify a class solely for settlement purposes; (ii) grant preliminary approval of the Settlement Agreement attached hereto as <u>Appendix 1</u> (the "Settlement Agreement") including the notice plan; and (iii) appoint Podiatry In Motion, Inc. as Class Representative and Edelman, Combs, Latturner & Goodwin, LLC as class counsel.

In support of this motion, Plaintiff states as follows:

1.     Plaintiff filed the above-captioned lawsuit against defendant, CoverMyMeds, LLC ("CMM" or "Defendant") alleging that Defendant violated the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"), and state law by sending unsolicited facsimile advertisements to Plaintiff and other members of the nationwide class.

2.     Counsel for Plaintiff and Defendant have reviewed and analyzed the legal and factual issues presented in this action, the risks and expense involved in pursuing the litigation to conclusion, the likelihood of recovering damages in excess of those obtained through this

1

settlement, the protracted nature of the litigation and the likelihood, costs and possible outcomes of one or more procedural and substantive appeals. The parties conducted arms-length settlement discussions including an informational session at which Defendant produced relevant evidence regarding the facsimile transmissions, its insurance coverage and financial condition, and a formal mediation session both of which were conducted with the assistance of Hon. Judge James F. Holderman (Ret) who assisted the parties in negotiating a settlement.

3.      Based upon this review and analysis, Plaintiff and Defendant entered into the Settlement Agreement.[1]

4.      The parties desire to settle and compromise the litigation on the terms and conditions embodied in the Settlement Agreement, including, without limitation, the following:

a.      <u>Class Certification</u>.  The parties agree to the certification of a class, for settlement purposes only, consisting of:

> All persons and entities with fax numbers who during the period February 29, 2012 through and including the date of the entry of the preliminary approval order in this action, were sent Transactional or Non-Transactional faxes by or on behalf of CoverMyMeds, LLC or any CMM User.

Based on review and analysis of the details of the information provided by the Defendant, the Parties allocated the faxes into two categories: Transactional and Non-Transactional Faxes. Plaintiff contends that the Non-Transactional Faxes are pure advertisements. Plaintiff contends that the Transactional faxes are faxes generated by CMM in the course of business which sought to continue or reestablish existing relationships. Samples of the actual faxes at issue are included in <u>Exhibit 1</u> to the Settlement Agreement.

---

[1]  All capitalized terms not otherwise defined herein are defined in accordance with the definitions set forth in the Settlement Agreement.

A brief recitation of the nature of Defendant CMM's business and the two general categories of faxes involved in the settlement (Transactional and Non-Transactional), will provide the Court with background and perspective regarding this Motion. CMM is a privately held healthcare technology company located in Columbus, Ohio. It provides an electronic solution for the submission of prior authorization requests for prescriptions to health care plans. A prior authorization is a process by which a health plan requires a health care provider to provide it with information as to why a prescribed drug should be approved and paid for by the health plan. A prior authorization request arises where a health care provider prescribes a drug for a patient which is not covered under the patient's health plan's formulary of approved drugs. Before the health plan will agree to pay for the drug prescribed, it requires the health care provider to submit a prior authorization request ("PA Request") informing the health plan why the prescribed drug is necessary. CMM has created a system to submit PA Request forms electronically and to streamline the process and make it easier for health care providers to complete PA Request forms and for health plans to process the forms.

Typically, the prior authorization process begins when a patient brings a prescription to a pharmacy or the healthcare provider directly submits the prescription to the pharmacy to be filled. The pharmacy then utilizes a system to identify whether the patient's health plan will approve and pay for the prescribed drug without any further documentation. If it will not, the pharmacy (assuming it is a CMM User) would use CMM's system and input information regarding the patient and the drug prescribed into the system and then it would initiate a transaction by which a PA Request form would be faxed to the patient's healthcare provider to be completed by the provider. Faxes or hard copy documents have been the traditional means of communications between the pharmacy, the health plan and the healthcare provider. In certain cases the entire

process may be accomplished electronically either by the healthcare provider using CMM's system to transmit the completed PA Request to the health plan or or by the healthcare provider manually faxing the completed PA Request form to the health plan.

The Transactional Faxes category in this case constitutes the bulk of the faxes at issue in the case. The Transactional Faxes relate to the PA Request process – specifically the completion and processing of a PA Request. Plaintiff contends that even the Transactional Faxes contain some promotional element as they encourage recipients to use CMM's system to process the PA Request. The Non-Transactional Faxes at issue in this case, encourage health care providers or pharmacies to use CMM's system to process PA Requests. While the system benefits healthcare providers and pharmacies by streamlining the PA Request process and greatly reduces the man-hours expended in this process, CMM does not charge either the health care providers or the pharmacies anything to use its system. It receives its revenue from other sources. All of the faxes involved are contained in Exhibit 1 to the Settlement Agreement which groups them according to their category. CMM asserts that both the Transactional and Non-Transactional faxes are not unsolicited advertisements subject to the TCPA. Plaintiff disagrees and contends that both categories of faxes promote Defendant's system and/or the quality of the system and therefore the faxes are unsolicited advertisements subject to the TCPA.

The parties engaged in extensive informal discovery to determine the quantity and nature of faxes sent to each member of the Settlement Class. Although the exact number of transmissions is not currently known, Defendant represents that, based on a review of its records, and after conducting a reasonable investigation, as of May 8, 2016, the Settlement Class consists of a total of 613,597 unique persons/entities and that 264,792 persons/entities received (only) Transactional Facsimiles and 348,805 persons/entities received Non-Transactional Facsimiles. Some Settlement

Class Members were sent more than one fax and some received both Transactional and Non-Transactional Faxes.

5.     <u>Settlement Recovery</u>. Defendants shall provide a $9,600,000.00 Settlement Amount. The entire Settlement Amount will be paid distributed and there will be no reversion to Defendant.  The Settlement Amount shall be distributed as follows:

a.     Reasonable costs of notice and administration ("Administration Costs") which will be paid from the Settlement Amount up to a maximum of $500,000.00 unless otherwise approved by the Court.

b.     Plaintiff's counsel's attorney's fees, which must be approved by the Court, will be paid from the Settlement Fund.  Plaintiff's counsel shall submit a request for attorney's fees in an amount not to exceed 1/3 of the Settlement Amount after deduction of the Administration Costs ($9,600,000 Settlement Amount less the Administration Costs); the attorney's fees petitioned for will not exceed $3,033,333.33).

c.     Plaintiff's incentive award which must be approved by the Court.  Plaintiff shall request an award of $10,000.00, as an incentive award for its services as a class representative.  This amount shall be in addition to any amount Plaintiff may recover as a Settlement Class Member.  Plaintiff pursued claims on behalf of a class with a risk of non-recovery.  Similar incentive awards have been approved in this District in other TCPA fax cases. <u>Richard Wade Architects, P.C. v. Lumber Liquidators, Inc.,</u> 14 C 1519 (N.D. Ill.) (*Dkt. No. 72*) ($5,000 incentive award to plaintiff); <u>Able Home Health, LLC and Dr. G. Neil Garrett DDS, PC v. Globe Med.-Surgical Supply Co.,</u> 12 C 5608 (N.D. Ill.)(*Dkt. No. 90*) ($5,000 and $10,000 incentive awards to named plaintiffs); <u>Gress v. Premier Healthcare Exchange West, Inc.,</u> 14 C 501 (N.D. Ill.) (*Dkt. No. 94*) ($4,000 and $8,000 incentive awards to named plaintiffs); and

Bearing Brokers, Inc. v. Gaddis, Inc., 10 C 5500 (N.D. Ill.) (*Dkt. No. 104*) ($4,500 incentive award to plaintiff).

       e.     If the deductions described in subparagraphs (a)-(c) are approved by the Court, the remaining money in the Settlement Fund will be divided pro rata among Settlement Class Members who timely submit a valid Claim Form, based on the number of Transactional and Non-Transactional Faxes received by each Settlement Class Member. Each Settlement Class Member who submits a timely and valid claim will receive one share for each Transactional Fax they received in the Class Period and five shares for each Non-Transactional Fax they received in the Class Period. The amount to be paid per share shall be determined by dividing the Claim Payment Amount by the total number of shares from all timely and valid claims submitted by Settlement Class Members.

       f.     All settlement checks (whether initial settlement payment or an additional settlement payment in a second distribution) shall be void 60 days from the date of issuance and shall so state on the check. Any unclaimed or undistributed amounts remaining in the Distributable Settlement Fund after all payments required under the Settlement Agreement have been made shall be distributed to one or more *cy pres* recipients selected by the parties, subject to court approval and the right of the Court to select another alternative *cy pres* recipient without effecting the enforceability of this Agreement. There will be no reversion of the Settlement Fund to Defendant.

     6.    <u>Class Notice</u>.  The Settlement Agreement provides for notice by facsimile and by mail. Several courts both within and outside this District have approved the sending of notice by facsimile in TCPA class action settlements. *See e.g.*, <u>C.E. Design, Ltd. v. King Supply Co., LLC</u>, 09 C 2057, 2012 WL 2976909 (N.D. Ill. July 20, 2012); <u>Wood Dale Chiropractic, Ltd. v.</u>

DrFirst.com, Inc., 12 C 780 (N.D. Ill.) (*Dkt. No. 73*) (fax and publication notice); <u>Able Home Health, LLC and Dr. G. Neil Garrett DDS, PC v. Globe Medical-Surgical Supply Co.</u>, 12 C 5608 (N.D. Ill.) (*Dkt No. 90*) (fax notice); <u>Dr. William P. Gress v. Northwood, Inc.</u>, 12 C 7278 (N.D. Ill.) (*Dkt. No. 38*) (fax and mail notice); <u>Able Home Health, LLC v. Healthy Advice Communications, Inc.</u>, 12 C 3019 (N.D. Ill.) (*Dkt. No. 60*) (fax and mail notice); <u>Richard Wade Architects, P.C. v. Engineering Services and Products Company</u>, 11 C 9251 (N.D. Ill.) (*Dkt. No. 58*) (fax notice); <u>City Select Auto Sales, Inc. v. David Randall Associates, Inc.</u>, 11-2658 (JBS/KMW), 2014 WL 413533 (D.N.J. Feb. 3, 2014). <u>Vandervort v. Balboa Capital Corp.</u>, SACV 11–1578–JLS (JPRx), 2014 WL 1274049 (C.D. Cal. March 27, 2014); <u>A & L Industries, Inc. v. P. Cipollini, Inc.</u>, 12-07598, 2014 WL 906180, at *1 (D.N.J. March 7, 2014) (rejecting arguments that notice had to be served in accordance with Rule 5(b); "Rule 23(c) should supersede because Rule 23(c) addresses class notice specifically, whereas Rule 5 addresses service generally..."). <u>See MacLean-Fogg Co. v. Ningbo Fastlink Equipment Co., Ltd.</u>, 08 C 2593, 2008 WL 5100414 (N.D. Ill. Dec. 1, 2008) (Court allowed service of summons and complaint to Chinese defendants by email and fax); Fed. R. Civ. P. 4 Commentary provides that a waiver of service may be sent by fax.

The Settlement Agreement provides that within 5 days after entry of the Preliminary Approval Order, Defendants' Counsel shall provide the Class List to the Settlement Administrator and Settlement Class Counsel. No later than 14 days after entry of the Preliminary Approval Order, the Settlement Administrator shall cause the notice and claim form (<u>Exhibit 2</u> to the Settlement Agreement) to be sent to the last known fax number of each Class Member as the information has been retained by CMM in the ordinary course of business. If the Notice is not successfully transmitted to a Settlement Class Member via facsimile as described above, then the

Settlement Class Administrator shall cause the Notice to be delivered to such Settlement Class Member via U.S. Mail to the most recent address contained in the records of Defendant for the Settlement Class member.  If no address is available in the records of Defendant, the Settlement Class Administrator shall perform a search utilizing the name and fax number of Settlement Class Member and may deliver Notice to any address reasonably identified as a Settlement Class Member entitled to receive Notice.

A supplemental notice by fax will be sent within 21 days of the date that the first Notice is sent to those who did not submit a claim form or who have not otherwise responded to the class notice by that date.  Settlement Class Members shall have at least 60 days after the first date on which Notice is sent or attempted to be sent via facsimile to submit a claim form, request exclusion from the Settlement Class, or object to the Settlement Agreement.

Plaintiff's Counsel will also post the Class Notice, Petition for Attorney's Fees, and the Settlement Agreement (including Exhibit 1 to the Settlement Agreement which defines and provides samples of faxes covered by the settlement) on its firm's website, http://www.edcombs.com

The Settlement Administrator may create a website which allows for electronic submission of claim forms.  Any website created by the Settlement Class Administrator may also post the Class Notice, Claim Form, Petition for Attorney's Fees, Preliminary Approval Order, and Settlement Agreement (including Exhibit 1).

7.      Class Members' Right to Opt Out. Any member of the Settlement Class may seek to be excluded from the Settlement Agreement and the releases therein by opting out of the Settlement Class within the time period set by this Court. Any member who opts out of the Settlement Class shall not be bound by any prior Court order or the terms of the Settlement

8

Agreement and shall not be entitled to any of the monetary benefits set forth in the Settlement Agreement. Settlement Class members will have at least 60 days after the first date on which Notice is sent to opt out of the Settlement Agreement.

8. <u>Claim Form</u>. In order to receive the consideration provided under the Settlement Agreement, each Settlement Class Member must timely return a claim form which will be provided with the Notice sent via facsimile and/or U.S. Mail. The Settlement Administrator may provide Settlement Class Members with the option to return a claim form by U.S. Mail, fax, or through a dedicated website. After the deadline for the receipt of claim forms expires, the Settlement Administrator will determine the number of valid Claim Forms received. Settlement Class Members may submit Claim Forms for more than one fax number.

9. <u>Class Members' Right to Object</u>. Any Settlement Class Member may object to the Settlement Agreement by filing with the Court and mailing to Plaintiff's Counsel and Defendants' Counsel a written objection within the time period set by this Court. Any Settlement Class Member who objects to the Settlement Agreement may appear and be heard at the final approval hearing. Settlement Class Members will have at least 60 days after the first date on which Notice is sent to object to the Settlement Agreement.

10. <u>If Settlement Agreement Terminated or Not Approved</u>. Prior to the Effective Date, if the Settlement Agreement is terminated pursuant to its terms then all other provisions of the Settlement Agreement shall be deemed null and void *ab initio* and without force or effect. In such event, the Settlement Agreement shall not be offered in evidence or used in this or any other Suit for any purpose, including the existence, suitability for certification, or maintenance of any purported class. In such event, the Settlement Agreement and all negotiations, statements, proceedings, and documents prepared in connection herewith (including all legal briefs and

9

exhibits thereto) shall not be deemed or construed to be an admission or confession by any party of any fact, matter, or proposition of law and shall not be offered by anyone adverse to either or both of the Defendants for any purpose whatsoever in any Suit. In the event of such termination, all Parties to this Action shall stand in the same position as if this Settlement Agreement had not been negotiated, signed, or filed with the Court.

11. Federal Rule of Civil Procedure 23(a) makes class certification appropriate in cases where:

> **(1) The class is so numerous that joinder of all members is impracticable,**
>
> **(2) There are questions of fact or law common to the class,**
>
> **(3) The claims or defenses of the representative parties are typical of the claims defenses of the class, and**
>
> **(4) The representative parties will fairly and adequately protect the interest of the class.**

Further, Federal Rule of Civil Procedure 23(b)(3) provides that a class action is maintainable if the above prerequisites have been met and:

> **the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.**

As demonstrated below, each of the requirements for certification of the Settlement Class is met.

a. Rule 23(a)(1) -- Numerosity. Fed. R. Civ. P. 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." The numerosity requirement is satisfied if it is reasonable to conclude that the number of members of the proposed class is greater than the minimum number required for class certification, which is about 10-40. Kulins v. Malco, 121 Ill. App. 3d 520, 530, 459 N.E.2d 1038 (1st Dist. 1984) (19 and 47 sufficient); Swanson

v. American Consumer Industries, 415 F.2d 1326, 1333 (7th Cir. 1969) (40 class members sufficient); Cypress v. Newport News General & Nonsectarian Hosp. Ass'n, 375 F.2d 648, 653 (4th Cir. 1967) (18 sufficient); Riordan v. Smith Barney, 113 F.R.D. 60, 62 (N.D. Ill. 1986) (10-29 sufficient); Sala v. National R. Pass. Corp., 120 F.R.D. 494, 497 (E.D. Pa. 1988) (40-50 sufficient); Scholes v. Stone, McGuire & Benjamin, 143 F.R.D. 181, 184 (N.D. Ill. 1992) (72 class members). In the present case, there are *no less than* 613,597 unique persons/entities and that 264,792 persons/entities received (only) Transactional Facsimiles and 348,805 persons/entities received Non-Transactional Facsimiles. This plainly satisfies the numerosity requirement.

      b.    Rule 23(a)(2) -- Commonality; and Rule 23(b)(3) - Common Questions of Law or Fact Predominate. Fed. R. Civ. P. 23(a)(2) requires that there be a common question of law or fact. Rule 23(b)(3) requires that the questions of law or fact common to all members of the class predominate over questions pertaining to individual members. The commonality requirement is satisfied if there are common questions linking the class members that are substantially related to the outcome of the litigation. Blackie v. Barrack, 524 F.2d 891, 910 (9th Cir. 1975). Common questions predominate if classwide adjudication of the common issues will significantly advance the adjudication of the merits of all class members' claims. McClendon v. Continental Group, Inc., 113 F.R.D. 39, 43-44 (D.N.J. 1986); Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 114 F.R.D. 48, 52 (S.D.N.Y. 1987); Spicer v. Chicago Board Options Exchange, CCH Fed. Sec. L. Rptr. [1989-90 Transfer Binder] ¶94,943, at p. 95,254 (N.D. Ill. 1990); Alexander Grant & Co. v. McAlister, 116 F.R.D. 583, 590 (S.D. Ohio 1987). Where a case involves "standardized conduct of the defendants toward members of the proposed class, a common nucleus of operative facts is typically presented, and the commonality requirement . . . is usually met." Franklin v. City of Chicago, 102 F.R.D. 944, 949 (N.D. Ill. 1984); Patrykus v. Gomilla, 121 F.R.D. 357, 361 (N.D.

Ill. 1988).

Here, there are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

(1)   Whether Defendant are engaged in a pattern of sending unsolicited facsimile advertisements;

(2)   The manner in which Defendant compiled or obtained its list of facsimile numbers; and

(3)   Whether Defendant thereby violated the TCPA.

The Settlement Class is defined in terms of all persons and entities with fax numbers who during the period February 29, 2012 through and including the date of the entry of the preliminary approval order in this action, were sent Transactional or Non-Transactional faxes by or on behalf of CoverMyMeds, LLC or any CMM User.

Numerous courts have certified class actions under the TCPA. Holtzman v. Turza, 08 C 2014, 2009 WL 3334909 (N.D. Ill., Oct. 14, 2009), aff'd in relevant part, 728 F.3d 682 (7th Cir. 2013); CE Design Ltd. v. Cy's Crabhouse North, Inc., 07 C 5456, 2009 U.S. Dist. LEXIS 67323 (N.D. Ill. July 27, 2009); Sadowski  v. Med1 Online, LLC, 07 C 2973, 2008 U.S. Dist. LEXIS 41766 (N.D. Ill., May 27, 2008); Hinman v. M & M Rental Ctr., 06 C 1156, 2008 U.S. Dist. LEXIS 27835 (N.D. Ill., April 7, 2008); Targin Sign Sys. v. Preferred Chiropractic Ctr., Ltd., 679 F.Supp. 2d 894 (N.D. Ill 2010); Garrett v. Ragle Dental Lab, Inc., 10 C 1315, 2010 WL 4074379 (N.D. Ill. Oct. 12, 2010); Lampkin v. GGH, Inc., 146 P.3d 847 (Okla. Ct. App. Oct. 31, 2006); Display South, Inc. v. Express Computer Supply, Inc., 961 So.2d 451, 455 (La. App. 1st Cir. 2007); Transportation Institute v. Promo Dart, Inc., No. 06-2-03460-1 (King Co. Sup. Ct. Wash., Nov. 14, 2006); Kavu, Inc. v. Omnipak Corporation, 246 F.R.D. 642 (W.D. Wash. 2007); ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc., 203 Ariz. (App.) 94, 50 P.3d

844 (Az. Ct. App. 2002); <u>Critchfield Physical Therapy v. Taranto Group, Inc.</u>, 293 Kan. 285, 263

P.3d 767 (Kan. 2011); <u>Karen S. Little, LLC v. Drury Inns, Inc.</u>, 306 S.W.3d 577 (Mo. App. 2010).

        c.    <u>Rule 23(a)(3) – Typicality</u>.   Rule 23 requires that the claims of the named

Plaintiff be typical of the claims of the class:

> A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory. The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact.

<u>De La Fuente v. Stokely Van Camp, Inc.</u>, 713 F.2d 225, 232 (7th Cir. 1983) (citation omitted).

        In the instant case, typicality is inherent in the class definition. By definition, each of the

class members has been subjected to the same practice as the named Plaintiff, namely they are

persons with fax numbers who, who during the period February 29, 2012 through and including

the date of the entry of the preliminary approval order, were sent Transactional or Non-

Transactional faxes by or on behalf of CoverMyMeds, LLC promoting or related to CMM services,

who are on the Class List.

        d.    <u>Rule 23(a)(4) -- Adequacy of Representation</u>. The adequacy of

representation requirement involves two factors: (a) the plaintiff's attorney must be qualified,

experienced, and generally able to conduct the proposed litigation; and (b) the plaintiff must not

have interests antagonistic to those of the class. <u>Rosario v. Livaditis</u>, 963 F.2d 1013, 1018 (7th

Cir. 1992).

        Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained

counsel experienced in handling class actions and claims involving unlawful business practices.

Edelman, Combs, Latturner & Goodwin, LLC's qualifications are set forth in <u>Appendix 2</u>. Neither

Plaintiff nor Plaintiff's counsel have any interests which might cause them not to vigorously pursue

this action.

          e.    <u>Rule 23(b)(3)  -- Class Action Is Superior to Other Available Methods of</u> <u>Resolving This Controversy</u>.  A class action is the superior method for the fair and efficient adjudication of this controversy.  The interest of class members in individually controlling the prosecution of separate claims is small because generally the class members are unaware of their rights and have damages such that it is not feasible for them to bring individual actions.  "[O]ne of the primary functions of the class suit is to provide a device for vindicating claims which, taken individually, are too small to justify legal action but which are of significant size if taken as a group."  <u>Brady v. LAC, Inc.</u>, 72 F.R.D. 22, 28 (S.D.N.Y. 1976).

        The special efficacy of the consumer class action has been noted by the courts and is applicable to this case:

> A class action permits a large group of claimants to have their claims adjudicated in a single lawsuit.  This is particularly important where, as here, a large number of small and medium sized claimants may be involved.  In light of the awesome costs of discovery and trial, many of them would not be able to secure relief if class certification were denied . . . .

<u>In re Folding Carton Antitrust Litigation</u>, 75 F.R.D. 727, 732 (N.D. Ill. 1977) (citations omitted).

Another court has noted:

> Given the relatively small amount recoverable by each potential litigant, it is unlikely that, absent the class action mechanism, any one individual would pursue his claim, or even be able to retain an attorney willing to bring the action. As Professors Wright, Miller, and Kane have discussed in analyzing consumer protection class actions such as the instant one, 'typically the individual claims are for small amounts, which means that the injured parties would not be able to bear the significant litigation expenses involved in suing a large corporation on an individual basis. These financial barriers may be overcome by permitting the suit to be brought by one or more consumers on behalf of others who are similarly situated.' 7B Wright et al., §1778, at 59; see, e.g., <u>Phillips Petroleum Co. v. Shutts</u>, 472 U.S. 797, 809 (1985) ('Class actions . . . may permit the plaintiffs to pool claims which would be uneconomical to litigate individually.'). The public interest in seeing that the rights of consumers are vindicated favors the disposition of the instant claims in a class action form.

Lake v. First Nationwide Bank, 156 F.R.D. 615, 625 (E.D. Pa. 1994).

12.    Although the exact number of Settlement Class Members is not currently known, the parties estimate that the Class List could be comprised of no less than 615,000 unique persons/entities each of whom received at least one fax transmissions.  The total theoretical liability based on a single fax transmission to a group of this size is $307.5 Million for a non-willful violation (615,000 x $500.00 = $307,500,000.00).

Plaintiff's Counsel was well informed of the pertinent facts of this case before commencing settlement discussions.  Schulte v. Fifth Third Bank, 805 F.Supp.2d 560, 587 (N.D. Ill. 2011) (holding that the pertinent inquiry is not whether formal discovery has occurred but rather what "facts and information have been provided").  Accordingly, Plaintiff's Counsel negotiated with Defendants to devise a comprehensive settlement that confers the maximum possible economic relief to all class members.

13.    Prior to entering into the proposed Settlement Agreement, Plaintiff's Counsel examined numerous samples of the types of faxes sent by CMM and was provided with detailed information concerning categories and volume of transmission that occurred during the relevant period.  Specifically, in addition to formal mediation session, the parties and Judge Holderman (Ret.) participated in an Informational Session during which CMM provided detailed information related to the nature of its business and the purpose, scope and duration of its faxing programs. Plaintiff's counsel also obtained affidavits from Defendant as to the accuracy of the information provided to it, including financial information regarding CMM.  Further Plaintiff's counsel also was provided with copies of CMM's relevant insurance policies.

14.    Defendant asserted that neither the Transactional nor the Non-Transactional Faxes were "unsolicited advertisements" subject to the TCPA as the faxes did not attempt to sell the

15

recipients anything; nor were they a pretense to later sell the recipients a product or service. Sandusky Wellness Ctr., LLC v. Medco Health Solutions, Inc., 788 F.3d 218, 223-24 (6th Cir. 2015) ( "[t]o be an ad, the fax must promote goods or services that are for sale, and the sender must have profit as an aim." ); Grind Lap Services, Inc. v. UBM LLC, No. 14 C 6448, 2015 WL 6955484 (N.D. Ill. Nov. 10, 2015) (a subscription renewal communication that did not promote the commercial availability or quality of any goods or services was not an unsolicited advertisement).  Defendant also had a pending motion to transfer this action to the United States District Court for the Southern District of Ohio (Columbus) where its headquarters is located. Defendant contends that if the Court granted Defendant's Motion to Transfer the Sandusky Wellness Center decision would be controlling authority.

Furthermore, Defendant raised some other defenses that could potentially reduce the size of the putative class.   Defendant pointed out that some of the faxes sent were likely transactional communications which it asserts are not "unsolicited advertisements" under the TCPA or were sent pursuant to consent or an established business relationship ("EBR"), and thus, not actionable under the TCPA.  See In re Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991 & the Junk Fax Prevention Act of 2006, 21 F.C.C.R. 3787 ¶ 49 (April 6, 2006) ("[M]essages whose purpose is to facilitate complete, or confirm a commercial transaction that the recipient has previously agreed to enter into with the sender are not advertisements for purposes of the TCPA[] . . . . [such as] a receipt or invoice, the primary purpose of which is to confirm the purchase of certain items by the facsimile recipient.").

While Plaintiff contends that both the Transactional and Non-Transactional faxes are unsolicited advertisements under the Seventh Circuit's decision in Holtzman v. Turza, 728 F.3d 682, 684 (7th Cir. 2013), Plaintiff admits that Defendant's argument that the Transactional Faxes

16

(faxes sent to recipients in connection with the process of a prior authorization request) are not unsolicited advertisements, is stronger than Defendant's argument that the Non-Transactional faxes (faxes sent to encourage use of CMM's prior authorization system) are not unsolicited fax ads. Therefore the risk that the Court may hold that the Transactional Faxes are not unsolicited advertisements subject to the TCPA is greater than the risk that the Court would find the Non-Transactional Faxes are not unsolicited advertisements. In light of the increased risk under the Settlement Agreement there is a different recovery provided for each type of fax.

15. Defendant also claimed that because not all faxes sent were unsolicited, both typicality and predominance could prevent certification of a class. In particular, Defendant claims it could be necessary for Plaintiffs' to obtain affidavits of class members in order to ascertain whether they actually received an unsolicited facsimile advertisement rather than transactional or business communications. Stewart v. Beam Global Spirits & Wine, Inc., No. 11-5149, 2014 WL 2920806 (D.N.J. June 27, 2014) (Relying on affidavits of putative class members to ascertain members of the class is insufficient to meet the requirements of Rule 23); Gene & Gene LLC v. BioPay LLC, 541 F.3d 318, 328-29 (5th Cir. 2008) (reversing district court's grant of class certification in TCPA case and holding that common issues did not predominate because "there is no class-wide basis for distinguishing which recipients gave consent and which did not"). But see Holtzman v. Turza, 728 F.3d 682, 684 (7th Cir. 2013)("Class certification is normal in litigation under § 227, because the main questions, such as whether a given fax is an advertisement, are common to all recipients."). While Plaintiff contends it did not have an EBR with Defendant, it is possible that members of the putative class may have an EBR with Defendant or consented to receive faxes from it.

16.     In light of the foregoing potential challenges to liability and obtaining class certification and the risks inherent in the litigation generally, Plaintiff's Counsel believes that the settlement of this action on the terms and conditions set forth in the Settlement Agreement is fair, reasonable, and adequate, and would be in the best interest of the Settlement Class Members.

WHEREFORE, Plaintiff respectfully requests that this Court enter an order in the form of Exhibit 3 to the Settlement Agreement, which (i) grants preliminary approval of the proposed settlement, (ii) appoints Podiatry In Motion, Inc. as a class representative and Edelman, Combs, Latturner & Goodwin, LLC as Settlement Class Counsel; (iii) directs the faxing and mailing of the Class Notice and a Claim Form in the form of Exhibit 2 to the Settlement Agreement, (iv) sets dates for submission of claim forms, opt-outs, appearances and objections, and schedules a hearing for final approval under Fed. R. Civ. P. 23(c)(2).

Respectfully submitted,

*s/ Dulijaza Clark*
Dulijaza Clark

Daniel A. Edelman
Dulijaza (Julie) Clark
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (FAX)
*Counsel for Plaintiff Podiatry In Motion, Inc.*

18

## <u>CERTIFICATE OF SERVICE</u>

       I, Dulijaza Clark, certify that on June 1, 2016, I caused a true and accurate copy of the foregoing document to be filed with Court's CM/ECF system, which will send notification of such filing to the following:

       Isaac J. Colunga (Isaac.colunga@icemiller.com)
       Bart T. Murphy (bart.murphy@icemiller.com)
       Heather L. Maly (heather.malay@icemiller.com)
       Martha L. O'Connor (Martha.oconnor@icemiller.com)
       ICE MILLER LLP
       2300 Cabot Drive, Suite 455
       Lisle, IL 60532

                            <u>s/ Dulijaza Clark</u>
                            Dulijaza Clark


Daniel A. Edelman
Dulijaza (Julie) Clark
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (FAX)